**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CHRISTOPHER J. PIORKOWSKI,

                Plaintiff,

             -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

21 CV 5479 (GRB)

FILED
CLERK
2:11 pm, Dec 20, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN, United States District Judge**:

*"For it's one, two, three strikes, you're out . . ."*

*From "Take Me Out to the Ball Game" (1908)*

Nearly two centuries ago, the *Rules and Regulations of the Knickerbocker Base Ball Club* (1845),[1] introduced the notion of three strikes: the failure of a batter to perform three times consecutively results in an "out," the end of the batter's turn. This concept has become part of our parlance and culture, and worked its way into the law. Criminal offenders facing a third conviction may be subject to harsh punishments under so-called "three-strikes" laws.[2] Indigent incarcerated litigants, earning three strikes for filing meritless cases, are largely denied the ability to qualify for *in forma pauperis* status. 28 U.S.C. § 1915.[3] Indeed, the Commissioner has, in many cases, been the beneficiary of this three-strikes rule. *See, e.g.*, *Levesque v. USA Dep't of Soc. Sec.*, 2015 WL

---

[1] "Rules and Regulations of the Knickerbocker Base Ball Club" (Sept. 23, 1845), http://www.19cbaseball.com/image-knickerbocker-baseball-rules html, last visited Dec. 19, 2022.
[2] *See generally* John Clark et al.,"'Three Strikes and You're Out': A Review of State Legislation," *National Institute of Justice Research in Brief*, Sept. 1997, available at https://www.ojp.gov/pdffiles/165369.pdf.
[3] *See Malik v. McGinnis*, 293 F.3d 559, 560 (2d Cir. 2002) (explaining the "three strikes rule").

8484515 (N.D.N.Y. Dec. 9, 2015) (dismissing disability action brought by indigent prisoner based upon, *inter alia*, the three strikes provision of 28 U.S.C. § 1915).

This Social Security disability matter has – unconscionably – been pending for more than a decade. The case is before this Court for a third time, having been remanded by two other district judges in the past. Astonishingly, the ALJ ignored the express directions imposed upon the last remand by simply reiterating his earlier decision, a seemingly willful disregard of a district court order. In other words, the ALJ's decision represents yet another swing and a miss, the Commissioner has struck out, and the game is over.

*Background*

In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405 et seq. (the "Act"), plaintiff challenges final determinations by the Commissioner of the Social Security Administration that he was ineligible to receive Social Security disability insurance benefits. *See* DE 1. Presently before the Court are the parties' cross motions, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings.

Due to the inconceivable delays and repeated errors by the Commissioner, the record here is a morass comprising almost 1,500 pages. There is little need to summarize all this material; rather, Judge Block's succinct summary of the facts upon the last remand will suffice:

> Piorkowski applied for benefits on June 7, 2012, alleging disability based on injuries to his hand, shoulder, back, and ankle, as well as anxiety and depression. He sought judicial review after an unfavorable decision. Judge Castel of the Southern District remanded for failure to consider his shoulder and hand impairments.
>
> On remand, another ALJ found that Piorkowski suffered severe impairments to his shoulder and ankle, but that his remaining physical impairments did not cause "more than minimal limitations on [sic] the claimant's ability to perform the basic demands of work activity." AR 414. Similarly, the ALJ found that Piorkowski's mental impairments "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." AR 415. The ALJ then found

> Piorkowski had the residual functional capacity ("RFC") to perform light work with certain limitations, and could "sit, stand, or walk up to 6 hours in an 8 hour day, with normal breaks." AR 417. That RFC, the ALJ concluded, precluded Piorkowski from performing his past work, but permitted him to work as a sales attendant, parking lot attendant, or counter clerk.
>
> The Commissioner's Appeals Council declined to review the ALJ's decision, rendering it final. Piorkowski timely sought judicial review.

*Piorkowski v. Comm'r of Soc. Sec.*, 2020 WL 5369053, at *1 (E.D.N.Y. Sept. 8, 2020).

**Discussion**

*Standard of Review*

In its review, the Court has applied the frequently reiterated standards for entitlement to Social Security disability benefits, review of a denial of such benefits, consideration of motions for judgment on the pleadings, examination of the procedures employed, the substantial evidence rule, deference accorded to ALJ decisions, evaluation of vocational evidence and the appropriate standard for review of medical opinions by treating and consulting medical providers. These standards, along with numerous authorities and citations, are discussed at length, merely by way of example, in *Zacharopoulos v. Saul*, No. 195075 (GRB), 2021 WL 235630 (E.D.N.Y. Jan. 25, 2021), which discussion is hereby incorporated by reference.

*The SDNY Remand*

In 2013, an ALJ rendered a decision denying plaintiff disability benefits. AR 10*ff*. The ALJ found that the claimant had the residual functional capacity to perform sedentary work with express exceptions: the plaintiff was unable to "run, squat, or climb," could only perform occasional overhead reaching solely with one arm, and could carry up to 30 lbs. AR 14. The ALJ accorded some of Dr. Benatar's opinion "great weight," but rejected other portions of his opinion – specifically related to the amount of time that plaintiff could stand or walk – "as it is not consistent with diagnostic testing and treatment notes." AR 15.

3

After plaintiff filed an action in the Southern District of New York, the case was remanded voluntarily via stipulation and order for further proceedings. AR 458-60. Judge Block noted that "Judge Castel of the Southern District remanded for failure to consider his shoulder and hand impairments." 2020 WL 5369053 at *1. An Order of the Appeals Council provides further insight into the reasons for the remand, which went beyond the failure to consider shoulder and hand injuries. AR 469-70. That Order also found that the first decision inadequately considered the opinions of Dr. Benatar, one of plaintiff's treating physicians, and directed the ALJ, on review, to expand the record, obtain additional records from the doctor, and consider this "expanded record." *Id.*

*Review and Remand of the Second ALJ Decision*

Following the SDNY remand, a decision was issued by ALJ Patrick Kilgannon, which was reviewed by Judge Block. The primary issue reviewed by Judge Block was the ALJ's attribution, once again, of "little weight" to the opinions of Dr. Benatar.

Judge Block found fault with the ALJ's assessment of Dr. Benatar's March 29, 2012 finding "that Piorkowski had a 'markedly affected' ability to lift, carry, kneel, and squat." 2020 WL 5369053 at *1. Judge Block found that the justification for the ALJ's decision to accord this determination little weight, to wit: that the doctor's opinion was "vague," did not constitute a "good reason" for largely disregarding it. Judge Block held:

> The ALJ's reasons for giving Dr. Benatar's opinions little weight were not "good reasons." If the ALJ thought the opinion regarding Piorkowski's ability to lift, carry, kneel, or squat was vague, he should have asked Dr. Benatar for clarification. *See* 20 C.F.R. § 404.1520b(b)(2) (listing ALJ's options when "we have insufficient evidence to determine whether you are disabled").

2020 WL 5369053, at *2. As to other flaws in the ALJ's analysis, Judge Block declined to reach those arguments, but helpfully noted:

4

> It suffices to remind the Commissioner that the need for a "severe" impairment is "intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Once a claimant has established at least one severe impairment—as Piorkowski has done—an ALJ's RFC determination "must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue,* 462 F. App'x 16, 18 (2d Cir. 2012).

2020 WL 5369053, at *2.

After the remand by Judge Block, the matter was considered, once again, by the same ALJ. The ALJ found that the claimant met the insured requirements through March 31, 2012, and had not engaged in substantial gainful employment since September 15, 2009. He found that the plaintiff suffered from severe impairments, including "degenerative joint disease right shoulder status post arthroscopy, degenerative joint disease right lower extremity status post Achilles tendon surgery, degenerative disc disease of the cervical and lumbar spine, and obesity." AR 818. Taken together, the ALJ found, these impairments significantly limit plaintiff's ability to work, and bar him from all past relevant work. AR 818.

Faced with an express directive to conduct "further proceedings consistent with this memorandum and order," 2020 WL 5369053 at *2, on remand, the ALJ – shockingly – decided to do nothing different. The record reflects no additional information obtained from Dr. Benatar, or any effort to seek clarification.[4] Instead, the ALJ reached the same determination using exactly the same words. In his initial decision, the ALJ determined:

> Little weight is given to Dr. Benatar's opinion dated March 29, 2012 that the claimant has a markedly affected ability to lift, carry, kneel, and squat since it is vague and does not provide quantified limitations.

---

[4] Citing a non-binding district court opinion and historical regulatory changes, Government counsel argues that the ALJ had no duty to obtain additional records. DE 17 at 19. Of course, this argument not only ignores the history of this case, which is littered with findings that the record was insufficient, but astonishingly overlooks the fact that the ALJ was under an express order of this Court to obtain additional records if he persisted in the belief that the doctor's opinions were "vague." 2020 WL 5369053, at *2. That the ALJ opted to disregard a district court order is not a matter that should be treated lightly.

AR 420. Following remand, the ALJ reiterated his finding nearly verbatim:

> Little weight is given to Dr. Benatar's opinion dated March 29, 2012 that the claimant has a markedly affected ability to lift, carry, kneel, and squat since it is vague and does not provide specific functional limitations.

AR 828. The substitution of the words "specific functional" for "quantified" in this sentence does not provide any insight, nor does the one additional sentence, provided without any detail, suggesting "Furthermore, marked limitations are inconsistent with his own treatment notes . . . " *Id.* Remarkably, then, the ALJ, as well as defendant on this motion, DE 17 at 17, conclusorily argue that Dr. Benatar's opinion was unsupported by his treatment notes, the very same position that was rejected by the Appeals Council a decade ago. AR. 469-70  The ALJ's unjustified rejection of Dr. Benatar's opinion formed the basis for his determination that the plaintiff could perform the full range of light work and was therefore not disabled. AR 823-829.

While the Court need not reach the ALJ's determinations concerning plaintiff's ability to find gainful employment in other positions that "existed in significant numbers in the national economy," one position identified bears notice. That position, described by the ALJ as "counter clerk," DOT 249.366-010, AR 831, is actually known as "counter clerk (photofinishing)" and consists of "selling flashcubes, film and camera batteries." *Wagner v. Comm'r of Soc. Sec.*, 2022 WL 3346430 at *1 (E.D.N.Y. 2022). The vocational expert here testified that there are 432,650 such jobs nationally; vocational experts in other cases have provided wildly varying estimates of this very same figure, ranging 24,000 to 250,0000. 2022 WL 3346430 at *2 (collecting cases).

As this Court has repeatedly ruled (and the agency seems to ignore), such vast disparities in sworn testimony by vocational experts retained by the Commissioner utterly undermines the integrity of such evidence. *Zacharopoulos*, 516 F. Supp. 3d at 221. Moreover, noting that "the ubiquity of smartphones with built-in digital cameras has consigned consumer film processing to the most niche of markets," this Court held that "the number of jobs in the U.S. economy for photo

development counter clerks [ ] is, in all probability, effectively zero." *Wagner*, 2022 WL 3346430 at *2-3 (citing study revealing only 190 photo development shops operating in the U.S.); *cf. Lisa Ann B. v. Berryhill*, 2019 WL 1505914, at *3-*4 (N.D. Ill. 2019) (vacating ALJ's decision because "the VE gave a DOT job number for an obsolete job in the photo finishing industry" that the court described as "vital testimony ... conjured out of whole cloth.").

Once again, this Court finds itself forced to "condemn the unblinking acceptance of conclusory vocational expert testimony by the ALJ, particularly that predicated on plainly obsolete positions." *Wagner*, 2022 WL 3346430 at *2 (cleaned up) (quoting *Zacharopoulos*, 516 F. Supp. 3d at 223-25); *Kiiroja v. Comm'r of Soc. Sec.*, 525 F. Supp. 3d 412, 413 (E.D.N.Y. 2021) (ordering remand where the "ALJ relies on the existence of 'document preparer' jobs in the national economy [because] the vocational expert dubiously opined that 35,000 such positions await those who care to plunge into production of microfilmed records"); *Feuer v. Saul*, 2019 WL 9042872, at *1 (E.D.N.Y. 2019), *report and recommendation adopted*, 2020 WL 1316528 (E.D.N.Y. 2020) (noting that it was "troubling" that vocational expert testified that "nearly 2.8 million individuals nationally are engaged in the unskilled sedentary position of document preparer for microfilming.").

*Nature of the Remand*

It is beyond peradventure that this matter, once again, must be remanded. The only question remaining is whether to remand for further proceedings or calculation of benefits. Courts have consistently refused "to recycle deserving claimants through the SSA bureaucracy simply because the ALJ has failed to produce a legally adequate opinion." *McClain v. Barnhart*, 299 F. Supp. 2d 309, 329 (S.D.N.Y. 2004) (collecting cases). Such concerns are amplified where the agency "appears to have ignored most of the evidentiary concerns raised by the district court." *Id.* Here, by contrast, the ALJ arguably ignored *all* the concerns identified by Judge Block.

7

Inexcusable delay, like the decade-long proceeding in this case, further weighs in favor of a remand for calculation of benefits. *Id.* at 330 (analyzing impact of nine-year adjudicatory delay). Moreover, where, as here, the litigative history in a matter suggests that further administrative proceedings would likely be futile, a remand for calculation of benefits is rendered more appropriate. *John C. v. Saul*, 2021 WL 1540504, at *7 (W.D.N.Y. Apr. 20, 2021). Taken together, these elements compel the conclusion that this matter should be remanded for calculation of benefits.

*Conclusion*

Based on the foregoing, this case is hereby REMANDED for calculation of benefits. The Clerk is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
December 20, 2022

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge